UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STARFAYSIA P.,

                              Plaintiff,

v.                                                      5:17-cv-01165
                                                        (TWD)

COMM'R OF SOC. SEC.,

                              Defendant.
_____

APPEARANCES:                          OF COUNSEL:

OLINSKY LAW GROUP                     HOWARD D. OLINSKY, ESQ.
*Counsel for Plaintiff*
300 S. State St.
Suite 420
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.           JOANNE JACKSON PENGELLY, ESQ.
OFFICE OF REG'L GEN. COUNSEL
REGION II
*Counsel for Defendant*
26 Federal Plaza - Room 3904
New York, NY 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**DECISION AND ORDER**</u>

        Plaintiff Starfaysia P. brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial

review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying her application for Supplemental Security Income ("SSI").  (Dkt. No.

1.)  This case has proceeded in accordance with General Order 18 of this Court which sets forth

the procedures to be followed when appealing a denial of Social Security benefits.  Both parties

have filed briefs.  (Dkt. Nos. 11, 12.)  Oral argument was not heard.  Pursuant to 28 U.S.C. §

636(c), the parties have consented to the disposition of this case by a Magistrate Judge. (Dkt. No. 5.) For the reasons discussed below, the Commissioner's decision denying Plaintiff's disability benefits is affirmed.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on April 2, 1989. (Administrative Transcript at 106.[1]) She completed the eighth grade and lives with her sister and nephew. (T. 110.) Plaintiff has never worked. (T. 241.) However, she reported doing "hair on the side" at home on the weekends for a few months in 2014. (T. 107.) Plaintiff alleges disability due to depression and associated mental and emotional problems, including social isolation, inability to care for daily activities, difficulty with others, poor comprehension, and hearing voices. (T. 222-24, 241.)

On January 10, 2014, Plaintiff filed an application for SSI. (T. 222-27.) The application was denied on April 18, 2014. (T. 135-40.) Thereafter, Plaintiff filed a written request for a hearing, which was held on November 17, 2015, by Administrative Law Judge ("ALJ") David J. Begley. (T. 101-24.) Plaintiff appeared at the hearing with her attorney and testified. *Id.* A vocational expert ("VE") also testified. (T. 121-23.) On March 21, 2016, the ALJ issued a decision finding Plaintiff was not disabled, as defined in the Social Security Act, since January 10, 2014, the application date. (T. 22-31.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on August 25, 2017. (T. 1-4.) Plaintiff timely commenced this action on October 18, 2017. (Dkt. No. 1.)

---

[1] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system. All other page references identified by docket number are to the page numbers assigned by the Court's CM/ECF electronic filing system.

## II.     MEDICAL RECORD AND OPINION EVIDENCE

### A.     Central New York Psychiatric Center

Plaintiff treated with Central New York Psychiatric Center while incarcerated from October 2011 through December 2013.  (T. 306-75.)  In 2011, she complained of depression symptoms, including anhedonia, low energy, and tearfulness for unexplained reasons, as well as feeling angry, irritable, anxious, and emotional.  (T. 310.)  She denied any history of suicidal behavior or self-injurious behavior.  *Id*.  She had no history of psychosis or mania.  *Id*.  She reported no legal work history.  (T. 312.)  She utilized reading, playing basketball, lifting weights, listening to music, cooking, playing cards, and watching television to avoid vegetative behavior and alleviate her symptoms.  (T. 318.)  She was prescribed Paxil and Wellbutrin.  (T. 326.)

In 2012, she was prescribed Zoloft and Wellbutrin.  (T. 334.)  She was compliant with her medication.  *Id*.  She continued to engage in numerous actives to manage her psychiatric symptoms.  (T. 319-20.)  She was able to effectively carryout her duties working in the mess hall.  *Id*.  She was diagnosed with panic disorder, polysubstance dependence, and attention deficit hyperactive disorder ("ADHD").  *Id*.  It was noted her overall response to treatment had been positive.  *Id*.

In March 2013, it was noted Plaintiff was recently transferred to a new facility.  (T. 321.)  She complained of difficulty adjusting to her environment and reported symptoms of agitation and anger.  *Id*.  She was diagnosed with panic disorder, polysubstance dependence, ADHD, and obesity.  *Id*.  June of 2013, Plaintiff presented neat and well groomed with appropriate eye contact.  (T. 359.)  She was cooperative, friendly, and calm.  *Id*.  Her mood was neutral.  *Id*.  In August of 2013, it was noted Plaintiff's attitude was cooperative, friendly, and clam.  (T. 361.)

Eye contact was appropriate, and her mood was anxious. *Id*. In September 2013, Plaintiff reported a stable mood. (T. 323.) However it was noted her presentation is often angry, agitated, and guarded. She continued reporting difficulty adjusting to her environment. *Id*. In November 2013, Plaintiff presented as cooperative and angry. (T. 363.) Eye contact was fair, mood irritable, affect congruent to mood. *Id*. She reported no hallucinations. *Id*. She denied suicidal thoughts. She expressed concern about her upcoming release date. *Id*. She was prescribed Prozac. *Id*.

Plaintiff's pre-release discharge summary was completed on December 5, 2013. (T. 370.) Plaintiff presented as clean, neat, and well kept. *Id*. She was pleasant and cooperative. *Id*. Plaintiff was orientated to person, place, and date. *Id*. Her speech was clear with normal rate, tone, and volume. *Id*. She did not report a history of auditory/visual hallucination. *Id*. There was no evidence of psychosis or delusion. *Id*. Her mood was stable, and her affect congruent with mood. *Id*. She reported no sensory deficits. *Id*. Plaintiff reported taking special education classes and having a learning disability. *Id*. It was noted she appeared of average intellect, with no psychomotor agitation or retardation. *Id*. Plaintiff reported normal memory for recent and remote events. (T. 371.) She rated her ability to concentrate as "bad." *Id*. She reported being easily districted, which could be redirected with cues. *Id*.

It was noted she struggles to learn appropriate anger management coping skills. *Id*. She stated she was willing to utilize verbal therapy and medication management. *Id*. She reported difficulty being around groups of people and feels "closed in" when required to be around others for an extended period of time. *Id*. It was noted her anxiety usually manifests itself in anger. *Id*. She has the ability and comfort level to ask for assistance when needed. *Id*. It was noted she can use public transportation appropriately. *Id*.

Plaintiff was released from custody in December 2013. (T. 368.) While she often presented as angry, agitated, and guarded, she reported benefiting from therapy and her medications. (T. 321, 329.) She reported feeling "calmer, less impulsive, and is able to think clearer." (T. 321.) She actively participated in her mandatory programming. *Id*. It was recommended that Plaintiff continue to receive supportive therapy and medication management. *Id*.

### B. Rebecca Fisher, Psy.D.

On April 3, 2014, Plaintiff presented to Dr. Fisher for a consultative psychiatric evaluation. (T. 374.) She walked to the evaluation and reported living at a halfway house as terms of her parole. *Id*. Plaintiff reported difficulty falling asleep and staying asleep, and a history of depression and low motivation. *Id*. She endorsed sadness, depressed mood, crying spells, loss of interest, irritability, anger, worry, restlessness, and anxiety attacks. *Id*. She reported hearing voices since she was a child that "tell her to do things" but stated, "I'm in control, and I know right from wrong, and I ignore them." (T. 374-75.) She denied cognitive symptoms. (T. 375.) Plaintiff denied homicidal and suicidal ideation, plan, or intent. *Id*.

Plaintiff reported she is able to dress, bath, groom, do laundry, shop, and manage money. (T. 376.) She is not allowed to cook at the halfway house. *Id*. She does not drive or take public transportation and does not like to be around people. *Id*. She stated her family relations are "good." *Id*. Plaintiff spends her days listening to music and likes basketball. *Id*.

Dr. Fisher found Plaintiff cooperative with adequate social skills. (T. 375.) She was well groomed, had appropriate eye contact, and displayed normal posture and motor behavior. (T. 375.) Her speech was fluent and clear. *Id*. She was expressive and her receptive language skills were adequate. *Id*. She was coherent and goal directed; there was no evidence of psychosis. *Id*.

Plaintiff's mood was dysthymic, her affect was depressed, and her sensorium was clear. *Id*. She was oriented to person, place, and time. *Id*. Her attention and concentration were intact. (T. 376.) She was able to recall 3 out of 3 objects and 3 out of 3 objects after a five-minute delay. *Id*. She stated 5 digits forward and 3 digits backwards. *Id*. Her intellectual functioning appeared average; her general fund of knowledge was somewhat limited. *Id*. Her insight and judgment were fair. *Id*.

Dr. Fischer diagnosed Plaintiff with unspecified depressive disorder and rule out unspecified psychotic disorder. (T. 376-77.) Prognosis was fair. (T. 377.) Dr. Fischer opined Plaintiff has no limitation in her ability to follow and understand simple directions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, or perform complex tasks independently. (T. 376.) She opined Plaintiff may have a moderate limitation in her ability to make appropriate decisions, relate adequately with others, and appropriately deal with stress. *Id*. She noted "[d]ifficulties may be caused by depression." *Id*. She found Plaintiff able to manage her own funds. (T. 377.) Dr. Fisher recommended that Plaintiff continue with mental health and drug treatment and engage in vocational training. *Id*.

### C.      Syracuse Community Health Center, Inc.

Plaintiff presented to Syracuse Community Health Center, Inc., on February 7, 2014, to establish care for therapy and medication management. (T. 396.) She wanted to work with Eileen Essi, LCSW-R, because she had treated her mother and knew her family history. *Id*. She complained of feeling depressed and anxious, and reported hearing voices and seeing shadows. *Id*. Plaintiff presented with dysphoric mood, blunted affect, and she provided short answers to questions. *Id*. Ms. Essi assessed psychosis not otherwise specified (at this point). *Id*.

On March 26, 2014, Plaintiff presented to Bill Hines, M.D., for medication management of depressive disorder with psychotic features and ADHD. (T. 403.) She was "protective" of her personal information and Dr. Hines had to coax minimal information out of her regarding the medications she had been taking while incarcerated and whether she wanted to continue taking them. *Id.* Dr. Hines continued Plaintiff on Topamax and fluoxetine and added Risperdal to treat her psychotic features. *Id.*

### 1. Eileen Essi, LCSW-R

From April 2014, through December 2014, Plaintiff generally treated with Ms. Essi on a weekly basis. (T. 463.) On April 7, 2014, Plaintiff participated in a creation of a genogram. (T. 394.) She reported living at a halfway house and limiting her interaction with people. (T. 395.) Her mood was dysphoric, and her affect was flat. *Id.* Ms. Essi assessed major depression disorder with psychotic features and ADHD. *Id.*

On April 14, 2014, Ms. Essi noted Plaintiff's mood was dysphoric, and her affect was blunted. (T. 435.) Plaintiff reported hearing voices. *Id.* Ms. Essi's assessment remained the same. *Id.* On April 21, 2014, Plaintiff discussed points of agitation living with roommates in the halfway house. (T. 433.) Her mood was dysphoric, her affect was flat, and Ms. Essi assessed major depressive disorder with psychosis and ADHD. *Id.* On April 28, 2014, Plaintiff's mood was dysphoric and her affect was blunted. (T. 430.) Ms. Essi's assessment remained the same. *Id.*

On May 5, 2014, Plaintiff presented in tears, reporting she missed her mother who had recently moved away. (T. 429.) She was angry with her mother for moving and did not like living in a halfway house. *Id.* Ms. Essi began working with Plaintiff on <u>The Anger Workout Workbook</u>. *Id.* Plaintiff's mental status and assessed impairments remained the same. *Id.*

On June 2, 2014, Plaintiff reported taking her medications as prescribed, but stated the voices in her head were still telling her to hurt people. (T. 425.) She was working on obtaining her GED, but was struggling with math. *Id*. She experienced conflict with others in the halfway house, as another resident threw out all of her school papers. *Id*. She reported getting angry when people yell at her, so she tried to stay alone. *Id*. Plaintiff's mental status and assessed impairments remained the same. *Id*. On June 9, 2014, Plaintiff stated she really does not like to be around people and would prefer to be alone. (T. 421.) She reported obtaining a certificate of completion from Syracuse Behavior Health for finishing drug and alcohol treatment as required for her parole. *Id*. On June 16, 2014, Plaintiff stated the voices she hears were telling her to say hurtful things to people. (T. 427.) She also reported visual hallucinations at night. *Id*. She reported some improvement with her medications, in that some thoughts of hurting people and visons had dwindled. *Id*. Ms. Essi again assessed ADHD and major depressive disorder with psychotic features. *Id*.

Throughout June, July, August, and September of 2014, Plaintiff continued to present s with dysphoric mood and blunted affect, and Ms. Essi's assessment remained the same. (T. 410-19, 423.) They continued to address Plaintiff's anger using <u>The Anger Management Workbook</u>. (T. 415-16.)

On October 20, 2014, Plaintiff presented for therapy and was tearful and depressed, and reported feeling very alone and unmotivated. (T. 409.) On November 17, 2014, Plaintiff reported her mother had moved back, which made her happy. (T. 407.) She continued to experience anxiety and they began using <u>The Anxiety and Phobia Workbook</u>. *Id*. On December 15, 2014, Plaintiff reported irregular sleep. (T. 406.) Ms. Essi's assessment remained unchanged. *Id*.

Thereafter, on March 16, 2015, Plaintiff presented to Ms. Essi and they again discussed her anger. (T. 404.) She admitted it was "very hard" for her to stay in control. *Id.* She reported going outside and hitting the side of the house when angry. *Id.* Ms. Essi discussed using <u>The Anger Workout Workbook</u>, and Plaintiff reported she had been to anger management classes three times, but it did not work. *Id.* Plaintiff's mood was dysphoric and her affect blunted. *Id.* Her thoughts and speech were clear and congruent. *Id.* Ms. Essi assessed major depressive disorder with psychosis and ADHD. *Id.* Plaintiff was to return in two weeks if she wished to continue treatment. *Id.*

### 2. Dr. Hines

As noted above, Plaintiff first treated with Dr. Hines on March 26, 2014, for medication management of ADHD and depressive disorder with psychotic features. (T. 403.) Dr. Hines continued Plaintiff on Topamax and fluoxetine and added Risperdal to treat her psychotic features. *Id.* On April 19, 2014, Plaintiff presented for a follow up appointment regarding medication therapy. (T. 439.) Her medications were adjusted and continued. *Id.* On May 7, 2014, her medications were continued. (T. 402.) On June 25, 2014, she complained of side effects from Risperdal so Dr. Hines switched Plaintiff to Abilify. (T. 398.) He noted Plaintiff needed medication for ADHD but was unsure whether her insurance would cover Strattera. *Id.* Dr. Hines prescribed Wellbutrin to address her symptoms. *Id.* It was noted "she is otherwise doing well and we will continue to follow her as appropriate." *Id.* She was to follow up in three months. *Id.*

### 3. Medical Source Opinion

On December 8, 2015, Ms. Essie completed a medical source statement regarding Plaintiff's mental functioning, which was co-signed by Dr. Hines. (T. 463.) Ms. Essie reported

seeing Plaintiff weekly for ten months.  *Id*.  She was diagnosed with major depressive disorder with psychotic features, ADHD, and antisocial personality disorder.  *Id*.  Prognosis was listed as poor.  *Id*.  Her symptoms were as follows: anhedonia or pervasive loss of interest in almost all activities; decreased energy; blunt, flat, or inappropriate affect; feelings of guilt or worthlessness; mood disturbance; difficulty thinking or concentrating; psychomotor agitation or retardation; emotional withdrawal or isolation; audio and visual hallucinations; hyperactivity; impaired impulse control; deeply ingrained, maladaptive patterns of behavior; persistent disturbances of mood or affect; easy distractibility; and memory impairments.  *Id*.

In terms of Plaintiff's ability to do work related activities on a day-to-day basis in a regular working setting, they opined Plaintiff had no limitations being aware of normal hazards and taking appropriate precautions.  (T. 463.)  She had "limited but satisfactory" limitations in understanding and remembering very short and simple instructions; carrying out very short and simple instructions; sustaining an ordinary routine without special supervision; and asking simple questions or requesting assistance.  *Id*.  Plaintiff was "seriously limited but not precluded" from remembering work-like procedures and adhering to basic standards of neatness and cleanliness.  *Id*.  She was "unable to meet competitive standards" for maintaining regular attendance and being punctual within customary, usual strict tolerances; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; dealing with normal work stress; and maintaining socially appropriate behavior.  *Id*.  They opined Plaintiff had "no useful ability to function" in maintaining attention for two-hour segments; working in coordination with or proximity to others without being unduly distracted;

making simple work-related decisions; accepting instructions and responding appropriately to criticism from supervisors; responding appropriately to changes in routine work setting; interacting appropriately with the general public; traveling in unfamiliar places; and using public transportation. *Id.*

They explained Plaintiff's ADHD severely limits her ability to stay focused and remember instructions and that her antisocial attitude affects her ability to interreact appropriately with others. *Id.* They indicated Plaintiff has a low IQ or reduced intellectual functioning. (T. 465.) Her treatment included a "limited amount of anger management" and she was prescribed Abilify, Bupropion, and Topamax. *Id.* They opined Plaintiff would be off task more than 20% of the time during an eight-hour workday, she would experience "good days" and "bad days," and that she would be absent from work more than four days monthly as a result of her impairments or treatment. *Id.* They explained Plaintiff's ADHD limits her ability to stay focused and interact with coworkers appropriately. *Id.*

### D.      State Agency Consultant

The State agency medical consultant. S. Shapiro, Ph.D., found Plaintiff's severe affective disorder was a severe impairment. (T. 128.) Dr. Shapiro found Plaintiff had moderate difficulties in maintaining social functioning, but no restrictions of activities of daily living, difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation, and found Plaintiff partially credible. (T. 129.) Dr. Shapiro found Plaintiff partially credible. (T. 130.) Dr. Shapiro found Plaintiff's statement regarding her limitations in performing work-related mental activities not fully supported by the medical evidence in the file. (T. 130-31.) Dr. Shapiro determined Plaintiff had no adaptive limitations and that she could do more complex tasks and learn new tasks independently. (T. 131-32.) Her thought process was

coherent and goal directed.  (T. 131.)  Dr. Shapiro estimated her cognitive functioning to be

within the "average range," and determined Plaintiff has the skill sets for a range of vocational

activities.  (T. 131-32.)

## III.    APPLICABLE LAW

### A.    Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits must establish

that he or she is "unable to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. § 1382c(a)(3)(A) (2015).[2]  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority, 42 U.S.C. § 405(a), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4).  Under that five-step

sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or

---

[2]  While the SSI program has special economic eligibility requirements, the requirements for
establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) (SSI) and Title II, 42 U.S.C. §
423(d) (Social Security Disability Insurance), are identical, so that "decisions under these
sections are cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414,
418 n.3 (2d Cir. 1983) (citation omitted).

combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chatter*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.*

## B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set forth the

crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982). If there is substantial evidence of record both for and against the Commissioner's decision, the court must uphold the decision absent legal error. *See DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998).

## IV.     THE ALJ'S DECISION

The ALJ found Plaintiff has not engaged in substantial gainful activity since January 10, 2014. (T. 24.) He found Plaintiff has the following severe impairments: depression with psychotic features and ADHD. *Id.* Plaintiff's obesity and history of polysubstance dependence in remission were determined to be non-severe impairments. (T. at 24-25.) He also found Plaintiff did not have an impairment or combination of impairments that meets or medically

equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix

1. *Id.* The ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform a

full range of work at all exertional levels but with the following nonexertional limitations:

> simple, routine, repetitive tasks; work in a low stress job, defined
> as having no fixed production quotas, no hazardous conditions,
> only occasional decision making, and only occasional changes in
> the work setting; occasional interaction with coworkers and
> supervisors; no tandem tasks; and no direct interaction with the
> general public.

(T. 27.) In reaching the RFC determination, the ALJ afforded "great weight" to the opinion of

Dr. Fisher, "little weight" to the opinion of Ms. Essi and Dr. Hines, and "some weight" to the

opinion of Dr. Shapiro. (T. 28-29.) The ALJ stated Plaintiff has no past relevant work. (T. 29.)

Considering Plaintiff's age, education, work experience, and RFC, the ALJ found there are jobs

existing in significant numbers in the national economy Plaintiff can perform, including a

garment sorter, silverware wrapper, or hand trimmer. (T. 30.) Thus, the ALJ concluded she has

not been under a disability, as defined in the Social Security Act, since January 10, 2014. (T. 31.)

## V.    DISCUSSION

Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence

because he failed to follow the treating physician rule in evaluating the opinion of Dr. Hines.

(Dkt. No. 11.) The Commissioner argues the ALJ applied the correct legal standard and

substantial evidence supports his decision. (Dkt. No. 12.)

### A.    Opinion Evidence and the RFC Determination

RFC is defined as "what an individual can still do despite his or her limitations . . . .

Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in

an ordinary work setting on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d

200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45 52 (2d Cir. 1999)) (internal

citations omitted). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *8). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

The Second Circuit has long recognized the "treating physician rule" set out in 20 C.F.R. § 416.927(c). "[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).

The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the

claimant or not replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. § 416.927(c)(1)-(6).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. *See Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).

### B.       The ALJ's RFC Determination

As noted above, in reaching the RFC determination, the ALJ afforded "great weight" to the opinion of Dr. Fisher, "little weight" to the opinion of Ms. Essi and Dr. Hines, and "some weight" to the opinion of Dr. Shapiro. (T. 28-29.) Specifically, he found Dr. Fisher's opinion consistent with the objective medical evidence of record. (T. 28.)

Regarding the opinion of Ms. Essi and Dr. Hines, the ALJ indicated the medical source statement was completed by Ms. Essi but also signed by Dr. Hines, the supervising physician. (T. 29.) He found the opinion inconsistent with the objective medical evidence of record. *Id*. He stated the medical records do not indicate Plaintiff's impairments were as severe as they opined. *Id*. The ALJ noted Plaintiff has received treatment and medication for her depression, which she stated is effective at minimizing her symptoms. *Id*. He stated Plaintiff has a Global Assessment of Function ("GAF") score of 60. *Id*. Additionally, the ALJ noted there was no

supporting documentation on which to support a diagnosis of antisocial personality disorder.  *Id.*

Further, the ALJ noted the opinion was completed by Ms. Essi, who is not an acceptable medical

source.  *Id.*  Therefore, he assigned little weight to the opinion.  *Id.*

As to the opinion of the State agency medical consultant, the ALJ noted that while

Plaintiff testified she has difficulty concentrating or paying attention, Dr. Shapiro did not limit

her to unskilled work.  *Id.*  Therefore, he assigned only some weight to that opinion.  *Id.*

### C.     Substantial Evidence Supports the ALJ's Analysis and Findings Regarding the Opinion Evidence and Plaintiff's RFC

Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence

because he failed to follow the treating physician rule in evaluating the opinion of Dr. Hines.

(Dkt. No. 11 at 13-18.)  The Court finds this argument unpersuasive for the following reasons.

As an initial matter, the ALJ's overall analysis and resulting RFC indicates sufficient

consideration of the various opinions, the medical evidence, and Plaintiff's testimony.  (T. 22-

31.)  In his decision, the ALJ indicated he had considered Plaintiff's symptoms based on the

requirements of 20 C.F.R. § 416.929 and SSRs 96-4p and 96-79 and had considered the opinion

evidence in accordance with the requirements of 20 C.F.R. § 416.927 and SSRs 96-2p, 96-5p,

96-6p, and 06-3p.  (T. 27-29.)

Further, while Plaintiff takes particular issue with the ALJ's assignment of little weight to

Dr. Hines' opinion because it was completed by a nonacceptable medical source, the Court

agrees with the Commissioner the ALJ's error was harmless.  (Dkt. No. 11 at 15-16; Dkt. No. 12

at 5; *see also* T. 29.)  First, as noted above, the ALJ explicitly acknowledged Dr. Hines' opinion

by stating, "I give the opinion of Eileen Essi, LCSWR and Bill C. Hines, MD, little weight.  The

form was completed by Ms. Essi but also signed by the supervising physician, Dr. Hines."  (T.

29.)  Second, licensed clinical workers like Ms. Essi are not acceptable medical sources.  SSR

06-03p, 2006 WL 2329939, at *2. However, "[w]hen a treating physician signs a report prepared by [a non-acceptable medical source] the report should be evaluated under the treating physician rule unless evidence indicates that the report does not reflect the doctor's view." *Djuzo v. Comm'r of Soc. Sec.*, No. 5:13-cv-272 (GLS/ESH), 2014 WL 5823104, at *4 (N.D.N.Y. Nov. 7, 2014). Here, the parties agree Dr. Hines' opinion should not have been "rejected" simply because Ms. Essi completed the medical source statement. (Dkt. No. 11 at 15-16; Dkt. No. 12 at 5.) Nevertheless, as discussed below, because the ALJ provided other "good reasons" for assigning little weight to the opinion of Ms. Essi and Dr. Hines, the Court finds the error is harmless and, therefore, remand is not required on this basis.

Generally, the opinion of the treating physician will not be afforded controlling weight when the treating physician issued opinions that were not consistent with those of other medical experts and the opinions are contradicted by other substantial evidence in the record. *Halloran*, 362 F.3d at 32; 20 C.F.R. § 404.1527(c)(2); *Snell*, 177 F.3d at 133 ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given.").

Here, the ALJ adequately summarized the opinion and explained why it was given less weight. (T. 29.) In so doing, the Court finds the ALJ properly considered Dr. Hines' opinion and provided good reasons for affording less weight to that opinion. In particular, the ALJ found the opinion was inconsistent with other substantial evidence of record, including objective medical evidence and treatment notes. (T. 29, 441-462.) Contrary to Plaintiff's argument, such reasons constitute "good reasons" for affording less than controlling weight to a treating physician's opinion. *See Morris v. Comm'r of Soc. Sec.*, No. 5:12-cv-1795, 2014 WL 1451996

(MAD/CFH), 2014 WL 1461996, at *3 (N.D.N.Y. Apr. 14, 2014) ("The less consistent an opinion is with the record as a whole, the less weight it is to be given.") (citing *Ottis v. Comm'r*, 249 F. App'x 887, 889 (2d Cir. 2007) (an ALJ may reject such an opinion of a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record")); *see also Gladle v. Astrue*, No. 7:05-CV-797 (NAM/GJD), 2008 WL 4411655, at *5 (N.D.N.Y. Sept. 23, 2008) (finding ALJ properly discounted opinion of treating physician where it was inconsistent with treatment records and objective findings of consultative examiner); *Harrington v. Colvin*, No. 14-CV-6044P, 2015 WL 790756, at *16 (W.D.N.Y. Feb. 25, 2015) (ALJ properly discounted treating physician opinion where it assessed limitations that were inconsistent with findings contained in the treatment records and with admissions claimant had made concerning his activities of daily living).

Of note, the ALJ afforded great weight to Dr. Fisher's consultative examination. (T. 28.) Dr. Fisher found Plaintiff cooperative with adequate social skills. (T. 375.) Her thought process was coherent and goal directed. *Id.* The was no evidence of psychosis. *Id.* Notably, her attention and concentration were intact. (T. 376.) She was able to count and perform simple calculations and serial 3s. *Id.* Her recent and remote memory skills were intact. *Id.* She was able to recall 3 out of 3 objects and 3 out of 3 objects after a five-minute delay. *Id.* Plaintiff stated 5 digits forward and 3 digits backward. *Id.* Her intellectual function was average. *Id.* Here insight and judgment were fair. *Id.*

Additionally, the ALJ noted Plaintiff was receiving treatment for her depression and takes medication, which is effective at minimizing her symptoms. (T. 29.) For instance, Plaintiff testified the medications prescribed by Dr. Hines were "helping" and explained, "I don't

have as much panic attacks. Still depressed a little bit but not as much as I was before I started taking the meds." (T. 112.)

Furthermore, the ALJ noted there is no supporting documentation to support a diagnosis of antisocial personality disorder, which was listed, for the first time, on the December 8, 2015, medical source statement. (T. 29, 463; *see, e.g.*, T. 396, 404, 406, 407, 409, 410, 412, 413, 416-35.) *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("An ALJ "is entitled to rely not only on what the record says, but also on what the record does not say."). Plaintiff argues that absent this specific diagnosis, her symptoms and limitations on social interaction are well documented throughout the record, including presenting as angry, agitated, or guarded, and was described as "resentful and menacing" or suspicious, which are "connected" to her impairments of depression and anxiety/panic disorder. (*see* Dkt. No. 11 at 16-17, citing T. 323, 325, 331, 334, 348, 351.) However, as the Commissioner correctly points out, these highlighted treatment notes predate her application for SSI by anywhere from three months (T. 323) to a little over two years (T. 325). (Dkt. No. 12 at 8.)

Further, it was within the ALJ's purview to resolve any material conflicts in the evidence and various opinions of record. *See Bliss v. Colvin*, 13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *accord Patel v. Comm'r of Soc. Sec.*, 7:12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014). This Court will not now reweigh that evidence which was before the ALJ. *See Lewis v. Colvin*, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (noting that it is not the role of a court to "re-weigh evidence" because "a reviewing court 'defers to the Commissioner's resolution of conflicting evidence'" where that resolution is supported by substantial evidence) (quoting *Cage*

*v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012)) (other citation omitted); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing C*arroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

Lastly, Plaintiff argues the ALJ failed to consider Ms. Essi's and Dr. Hines' "lengthy treatment relationship with many treatment encounters" and their specialty in "Plaintiff's mental health treatment." (Dkt. No. 11 at 17.) However, the Second Circuit does not require "slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran*, 362 F.3d at 31-32) (affirming ALJ opinion which did "not expressly acknowledge the treating physician rule," but where "the substance of the treating physician rule was not traversed"). Although the ALJ did not specifically refer to Dr. Hines and Ms. Essi as Plaintiff's "treating mental health providers" or specifically note how often they treated Plaintiff, his decision cites to their treatment records, and he references Plaintiff's treatment for depression and her medication, which was prescribed and managed by Dr. Hines. (T. 29.)

In sum, the ALJ provided good reasons for affording less weight to the opinion of Dr. Hines in accordance with the Regulations, enabling this Court to conduct meaningful review and conclude that the ALJ's analysis and resulting RFC are supported by substantial evidence. *See Booker v. Astrue*, 07-CV-0646 (GLS), 2011 WL 3735808, at *5 (N.D.N.Y. Aug 24, 2011) ("The crucial factors in an ALJ's decision must be set forth in sufficient detail as to enable meaningful review by the court.") (citing *Ferraris*, 728 F.2d at 587); *Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must 'build an accurate and logical bridge

from the evidence to [his] conclusion to enable a meaningful review.'") (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

For the reasons outlined above, the ALJ's analysis of the medical opinions and the resulting RFC are supported by substantial evidence. Remand is therefore not required on this basis.

### D. The ALJ's Step Five Determination

Plaintiff contends that because the ALJ's RFC determination is erroneous, the Step Five determination is not supported by substantial evidence. (Dkt. No. 11 at 17-18.) Specifically, Plaintiff contends that had the ALJ properly followed the treating physician rule, the opinion evidence in this matter would have directed significantly greater restrictions in the RFC, which would result in a finding of disability. *Id.* Plaintiff's argument is without merit.

As discussed, the ALJ properly weighed the medical evidence at issue and the RFC is supported by substantial evidence of record. As to whether there are jobs that Plaintiff can perform, the VE testified that given the RFC determined by the ALJ, a hypothetical individual with Plaintiff's age, education, and work experience could perform work in the national economy as a garment sorter, silverware wrapper, or hand trimmer. (T. 122.) Remand is therefore not required on this basis. *See Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009) (citations omitted) ("An ALJ may rely on a vocational expert's testimony regarding a hypothetical so long as the facts of the hypothetical are based on substantial evidence, and accurately reflect the limitations and capabilities of the claimant involved.").

In light of the foregoing, the Court finds the ALJ's decision was based upon correct legal standards, and substantial evidence supports his determination that Plaintiff was not under a disability, as defined in the Social Security Act, since January 10, 2014, the application date.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED**.


Dated: March 12, 2019
      Syracuse, New York

                                Thérèse Wiley Dancks
                                United States Magistrate Judge